No. 24-60309

_____

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

STATE OF MISSISSIPPI; UNITED STATES OF AMERICA,
*Plaintiffs–Appellants,*

v.

JXN WATER,
*Defendant–Appellee.*

_____

UNITED STATES OF AMERICA,
*Plaintiff,*

v.

CITY OF JACKSON, MISSISSIPPI,
*Defendant.*

_____

On appeal from the United States District Court for the
Southern District of Mississippi
Nos. 3:12-cv-790, 3:22-cv-686 (Hon. Henry T. Wingate)

_____

**OPENING BRIEF FOR THE UNITED STATES**

_____

Of Counsel:

MINA KIM
*Deputy Assistant General Counsel*

SARAH MERRILL
VIRGINIA HENNING
*Attorneys*
U.S. Dept. of Agriculture

TODD KIM
*Assistant Attorney General*

JOHN SMELTZER
KARL FINGERHOOD
ANGELA MO
EZEKIEL A. PETERSON
*Attorneys*
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60309

*State of Mississippi; United States of America*
*v.*
*JXN Water*

Under Circuit Rule 28.2.1, Appellant is a governmental party that need not furnish a certificate of interested persons.

s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for the United States

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument would be both appropriate and helpful to the Court in ensuring full consideration of the issues presented.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................ii

TABLE OF AUTHORITIES.................................................................v

GLOSSARY ...................................................................................ix

INTRODUCTION..............................................................................1

STATEMENT OF JURISDICTION.....................................................3

STATEMENT OF THE ISSUE............................................................4

PERTINENT STATUTES AND REGULATIONS ..................................4

STATEMENT OF THE CASE ............................................................4

    A.    Statutory and regulatory background ...................................4

    B.    Factual background ...........................................................7

        1.    The Jackson water crisis and the current lawsuits. ..........................................................7

        2.    The ITPM's request for confidential SNAP-recipient data. ..................................................9

        3.    The district court's decision. .......................................13

SUMMARY OF ARGUMENT ............................................................16

STANDARD OF REVIEW.................................................................20

ARGUMENT ..................................................................................20

I.    This Court has jurisdiction to review the disclosure order....................................................................................20

    A.    The district court's order grants an injunction appealable under 28 U.S.C. § 1292(a)(1). ............................ 21

    B.    The disclosure order is a collateral order appealable under 28 U.S.C. § 1291. ..................................... 25

    C.    If this Court finds that it does not have appellate jurisdiction, it should treat and hear this case as a petition for a writ of mandamus. ...................................... 27

II.    The district court abused its discretion in ordering disclosure of confidential SNAP-recipient data because a municipal rate schedule is not a "federal assistance program." ............................................................................... 29

CONCLUSION ............................................................................... 39

CERTIFICATE OF COMPLIANCE ............................................. 40

CERTIFICATE OF DIGITAL SUBMISSION ............................. 41

CERTIFICATE OF SERVICE ...................................................... 42

# TABLE OF AUTHORITIES

## Cases

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   727 F.3d 1214 (Fed. Cir. 2013) ........................................27

*Barrios-Cantarero v. Holder*,
   772 F.3d 1019 (5th Cir. 2014) ...........................................28

*Carder v. Continental Airlines, Inc.*,
   636 F.3d 172 (5th Cir. 2011) .............................................20

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ............................................................21

*Cheapside Minerals, Ltd. v. Devon Energy Prod. Co., L.P.*,
   94 F.4th 492 (5th Cir. 2024) .............................................30

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
   542 U.S. 367 (2004) ..........................................................28

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) ..........................................................26

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ..........................................................20

*Gardner v. Westinghouse Broad. Co.*,
   437 U.S. 478 (1978) ..........................................................22

*Hewlett-Packard Co. v. Quanta Storage, Inc.*,
   961 F.3d 731 (5th Cir. 2020) .............................................20

*In re Deepwater Horizon*,
   793 F.3d 479 (5th Cir. 2015) ...................... 21, 22, 25, 26, 27

*In re JPMorgan Chase & Co.*,
   916 F.3d 494 (5th Cir. 2019) .............................................28

*Lauro Lines s.r.l. v. Chasser*,
   490 U.S. 495 (1989) ..........................................................26

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) ............................................................27

*Moore v. Tangipahoa Parish Sch. Bd.*,
    843 F.3d 198 (5th Cir. 2016) ............................................................22

*NPR Invs., L.L.C. ex rel. Roach v. United States*,
    740 F.3d 998 (5th Cir. 2014) ............................................................30

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
    171 F.3d 1083 (7th Cir. 1999) ...........................................................22

*Police Ass'n of New Orleans Through Cannatella v. City of New Orleans*,
    100 F.3d 1159 (5th Cir. 1996) ...........................................................21

*Rollins v. Home Depot USA*,
    8 F.4th 393 (5th Cir. 2021) ..............................................................34

*Russello v. United States*,
    464 U.S. 16 (1983) ..........................................................................34

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,
    927 F.3d 830 (5th Cir. 2019) ............................................................33

*Thomas v. Hughes*,
    27 F.4th 363 (5th Cir. 2022) ............................................................20

*United States v. Oakland Cannabis Buyers' Co-op*,
    532 U.S. 483 (2001) ........................................................................38

*United States v. Wong Kim Bo*,
    472 F.2d 720 (5th Cir. 1972) ............................................................34

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ............................................................27

*Virginian R. Co. v. Railway Employees*,
    300 U.S. 515 (1937) ........................................................................38

*Will v. Hallock*,
    546 U.S. 345 (2006) ........................................................................25

## Statutes

7 U.S.C. § 2019(e)(3) (1976)...................................................35

7 U.S.C. § 2020(d) ............................................................5

7 U.S.C. § 2020(e)(8)...........................6, 12, 17, 18, 29, 30, 33, 34, 36, 38

7 U.S.C. § 2020(e)(8)(C) ................................................18, 33

7 U.S.C. § 2020(i) (Supp. II 1978) .........................................35

7 U.S.C. §§ 2011–2036d.......................................................4

7 U.S.C. § 2011 ..............................................................23

28 U.S.C. § 959(b) ..........................................................33

28 U.S.C. § 1291 .....................................................3, 17, 25

28 U.S.C. § 1292(a)(1).............................................3, 17, 21, 25

28 U.S.C. §§ 1331 ...........................................................3

Miss. Code Ann. § 43-1-19(1) ..............................................6

Jackon, Miss., Code of Ordinances § 122-273...........................31

## Regulations and Federal Register Notices

2 C.F.R. § 200.203(a)(1).....................................................30

7 C.F.R. § 272.1(c)(1)(i) (2023) .........................................6, 37

7 C.F.R. § 272.1(c)(1) (1979)...........................................35, 36

7 C.F.R. § 272.1(c)(1)(i) (1985) ............................................37

49 Fed. Reg. 48,677 .........................................................37

43 Fed. Reg. 47,846 .........................................................36

18-14 Miss. Code R. § 1.2 ...................................................6

18-14 Miss. Code R. § 1.11 ........................................................ 7

# GLOSSARY

ITPM            Interim Third-Party Manager

MDHS            Mississippi Department of Human Services

SNAP            Supplemental Nutrition Assistance Program

USDA            United States Department of Agriculture

## INTRODUCTION

In August 2022, high rainfall and extreme flooding overwhelmed the ailing Jackson, Mississippi, water-treatment plant, causing a catastrophic drop of pressure in the distribution system and preventing the plant from maintaining water pressure across the City. For a period of weeks, many residents had no running water, and most residents lost the ability to use water safely for any purpose. Prompted by that crisis, the United States sued the City to enforce the Safe Drinking Water Act. The district court consolidated the suit with a longstanding federal-and-state Clean Water Act enforcement action against the City's sewer system that resulted in a 2013 consent decree. The parties to the lawsuit agreed to a stipulated order under which the district court appointed an Interim Third-Party Manager (ITPM) to manage the City's municipal drinking water and sewer systems (JXN Water).

One of the ITPM's tasks was to stabilize the systems' financial health. While raising rates overall, the ITPM seeks to implement a tiered rate schedule for JXN Water customers, under which participants in the Supplemental Nutrition Assistance Program (SNAP) would pay a lower meter-availability charge than other users. The

United States agrees that this is a good idea and proposed several alternatives to lawfully implement that policy. But the way the ITPM proposes doing so, which the district court adopted, contravenes the Food and Nutrition Act of 2008.

The order on appeal directs the United States and the State of Mississippi to disclose the names and addresses of all SNAP recipients in the area served by JXN Water, without those recipients' consent. Because SNAP is a means-tested program, the nonconsensual disclosure of an individual's SNAP status reveals the individual's financial status. Such a disclosure violates the Food and Nutrition Act, which protects SNAP recipients' privacy and prohibits the disclosure of confidential SNAP-recipient data subject to limited exceptions not relevant here.

The district court held that one statutory exception, for disclosures to other "federal assistance programs," applies here. But that is plainly wrong. A municipal utility rate schedule—even when implemented by a receiver appointed by a federal court—is not a "federal assistance program." The district court's unjustified expansion of an exception to the general bar on disclosure of private SNAP-recipient data threatens

to undermine trust in SNAP, chill SNAP participation rates, and subject SNAP recipients to stigma and predatory marketing. This Court should reverse and vacate the disclosure order, which will allow the parties and the district court to turn back to developing and implementing a legally durable solution to this problem.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1345. The district court entered the order on appeal on April 16, 2024, and the United States filed its notice of appeal on June 14, 2024, so the appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B)(i). As explained further below, at 21–25, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1) because the district court's interlocutory order grants an injunction. In the alternative, this Court has jurisdiction under 28 U.S.C. § 1291 and the collateral-order doctrine, because the district court's order conclusively determines an important issue separate from the merits and is effectively unreviewable on appeal from final judgment.

## STATEMENT OF THE ISSUE

Federal law prohibits the disclosure of data obtained from SNAP recipients, except for limited purposes, including disclosure to persons connected with the administration or enforcement of "Federal assistance programs." 7 U.S.C. § 2020(e)(8)(A)(i).

The issue presented is whether the district court erred as a matter of law, and thus abused its discretion, when it held that a municipal utility rate schedule implemented by a court-appointed receiver is a "federal assistance program."

## PERTINENT STATUTES AND REGULATIONS

All pertinent statutes and regulations are included in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory and regulatory background

The Food and Nutrition Act of 2008 (formerly known as the Food Stamp Act) establishes SNAP (formerly known as the Food Stamp Program) as a federal benefit program that helps low-income households afford nutritious food. *See* 7 U.S.C. §§ 2011–2036d. Generally, households eligible for SNAP are those for which "incomes

and other financial resources . . . are determined to be a substantial limiting factor in permitting them to obtain a more nutritious diet." *Id.* § 2014(a).

The statute establishes a voluntary program administered by the States. *Id.* §§ 2013(a), 2020(d). To be eligible to disburse benefits, States must meet federal requirements and be approved by the United States Department of Agriculture (USDA). *Id.* § 2020(d). Individual States are then responsible for administering SNAP, including accepting and approving applications to participate and keeping records of recipients. *Id.* § 2020(a). USDA monitors each State's compliance. *Id.* § 2020(d)–(e). If States fall out of compliance with the requirements of the Food and Nutrition Act, then, after notifying the State of the lapse and giving the State an opportunity to come back into compliance, USDA "shall proceed to withhold from the State" funds to implement SNAP "as the Secretary [of Agriculture] determines to be appropriate. *Id.* § 2020(g).

Under the Food and Nutrition Act, any State desiring to participate in SNAP must submit a plan of operation specifying the manner in which the program will be conducted in the State. 7 U.S.C. § 2020(d). State plans must contain specified elements, including

"safeguards which prohibit the use or disclosure of information obtained from applicant households." 7 U.S.C. § 2020(e)(8). The Act makes limited exceptions to this general prohibition on disclosing SNAP-recipient information. Relevant here, state programs "shall permit" the disclosure of such information to "[1] persons directly connected with the administration or enforcement of [SNAP], [2] other Federal assistance programs, [3] federally-assisted State programs providing assistance on a means-tested basis to low-income individuals, or [4] general assistance programs which are subject to joint processing requirements." 7 U.S.C. § 2020(e)(8); *see also* 7 C.F.R. § 272.1(c)(1)(i) (tracing the statutory requirement).

In Mississippi, the Mississippi Department of Human Services (MDHS) administers SNAP and keeps records of SNAP recipients. 18-14 Miss. Code R. § 1.2. Consistent with the requirements in the Food and Nutrition Act, Mississippi adopted laws prohibiting disclosure of information received from SNAP applicant households except as permitted by federal law. Miss. Code Ann. § 43-1-19(1) ("The records of the disbursement of funds or payments to recipients of [SNAP] shall only be disclosed pursuant to federal regulations regarding disclosure of

information for . . . Food Stamp Act programs."). To implement the state statutory requirement, MDHS has issued additional regulations prohibiting agency employees from disclosing the names and addresses or lists of SNAP applicants and recipients; an adult household member or other authorized representative must provide written consent before specific information may be disclosed to anyone else. 18-14 Miss. Code R. § 1.11(B)(1), (C). Even when USDA audits state programs, it does not request complete records on SNAP recipients but merely conducts a random sampling of households within a state. ROA.2417–18.

## B. Factual background

### 1. The Jackson water crisis and the current lawsuits.

In August 2022, excessive rainfall and extreme flooding overwhelmed the ailing Jackson, Mississippi, drinking-water system and prevented the plant from producing enough water to maintain water pressure across the city. ROA.638–39. Because of the low water pressure, most residents lost the ability to use water safely for any purpose. ROA.638–39. The City restored water pressure and service on September 6, 2022. ROA.2890.

This case comprises two consolidated lawsuits, both filed by the United States against the City of Jackson. *See* ROA.849–54 (consolidating cases). The first, S.D. Miss. No. 3:12-cv-790, is a longstanding Clean Water Act enforcement action brought by the United States and the State of Mississippi, on behalf of the Mississippi Department of Environmental Quality, in which the parties entered a consent decree in 2013. ROA.472–577. The consent decree was designed to ensure that the City's sewer system achieved and maintained compliance with the Clean Water Act and did not experience sewer overflows. ROA.480. The second case, S.D. Miss. No. 3:22-cv-686, is a Safe Drinking Water Act enforcement action that the United States filed in November 2022, after the August 2022 water crisis.

In November 2022, the parties agreed in a stipulated order to the district court's appointment of Ted Henifin as a federal receiver and Interim Third-Party Manager (ITPM) to temporarily operate, maintain, manage, and control the City of Jackson's water system. ROA.3186. In September 2023, the parties agreed in a second stipulated order entered by the district court that the ITPM would temporarily assume operational and managerial control of Jackson's sewer system.

ROA.1995. Under that order, the ITPM's authority would terminate upon motion by the United States after consultation with the State or four years after the order. ROA.2085–87. Both stipulated orders directed the ITPM to develop a financial management plan and to work with the City in developing any appropriate changes to user rates and the rate structure. ROA.2064; ROA.2058. The stipulated orders gave the ITPM, under specified conditions, the "full power and authority" to adjust the rates, rate structures, and fees paid by water and sewer users. ROA.2064; ROA.3190.

In accordance with the stipulated orders, the ITPM independently developed new water and sewer rates that he deemed appropriate to stabilize and rehabilitate the City's water and sewer systems. The new rates incorporated a 75 percent discount of the monthly meter-availability charge for low-income residents receiving SNAP benefits. The United States supports the discounted rate. ROA.2262.

### 2. The ITPM's request for confidential SNAP-recipient data.

In February 2024, the ITPM filed a motion requesting that the district court direct MDHS to release the name, address, phone number, and email address of SNAP-benefit recipients in 32 ZIP codes in the

Jackson area. ROA.2193–94. According to the ITPM, the "only practical way to timely implement th[e] rate classification" he had developed was to cross-reference the SNAP-recipient list with the City's accountholder list. ROA.2194.

Although the United States supports discounting the rate for SNAP recipients, the United States opposed the ITPM's motion because it would violate the law that protects SNAP-recipients' privacy. ROA.2223–2224. Nonetheless, the United States made clear that it "acknowledge[d] the good intentions of the ITPM" in implementing the rate and that it "remain[ed] willing to work with MDHS and the ITPM" to lawfully implement the rate. ROA.2224–25. After the ITPM filed the motion, the United States discussed several alternative proposals with the ITPM that would implement the discounted rate without compromising the privacy of SNAP recipients. ROA.2225.

MDHS—which is not a separately named party to either the Clean Water Act or Safe Drinking Water Act case—sent a letter to the court explaining that, although the agency was not a party to the suit, it opposed the motion principally on the grounds that disclosure to the receiver is not permitted by law and risks requiring MDHS to violate

USDA regulations, potentially resulting in the loss of funds for MDHS's to administer SNAP. ROA.2277–2280. The court heard oral argument from the ITPM, the United States, and MDHS. Shortly thereafter, the ITPM moved to withdraw its motion and stated his intention to amend the motion in response to some concerns raised by the United States and MDHS. ROA.2241–2242.

In March 2024, the ITPM filed a new motion asking the district court to order the United States to release a list containing the name and address of SNAP recipients in the Jackson area and to provide the ITPM with updated lists every quarter until the ITPM's authority lapses. ROA.2245–46.

The United States opposed the ITPM's new motion on three grounds. First, as the United States had previously explained in opposition to the ITPM's prior motion, the United States does not possess the requested SNAP information. ROA.2266. Rather, MDHS—which is not a named party to the suit—administers the SNAP program in Mississippi. ROA.2266. Second, the United States explained that it does not have the authority to demand SNAP information from MDHS for the purpose of complying with the court's order, because this is not

one of the enumerated exceptions to the prohibition on disclosure. ROA.2267–68. Third, the United States explained that MDHS could not disclose SNAP data to the ITPM consistent with federal law because, contrary to the ITPM's argument, he does not administer a "federal assistance program." ROA.2269–70 (citing 7 U.S.C. § 2020(e)(8)(A)(i)). Additionally, the United States observed that the harms from a blanket disclosure of SNAP recipients without their consent, such as a chilling effect on SNAP participation, would outweigh the potential benefits of disclosure even if it were lawful. ROA.2270–73.

The United States outlined several more durable, legal ways for the ITPM to identify low-income accountholders who participate in the SNAP program that would protect SNAP recipients' privacy and comply with federal law. ROA.2273. These alternatives focused on obtaining SNAP recipients' consent to release their data, which would enable JXN Water to realistically plan based on long-term participation rates and would avoid suddenly forcing accountholders off the reduced SNAP rate when the managership ends and JXN Water has no way to confirm that the accountholder still qualifies for SNAP benefits. These alternatives would be lawful and narrowly tailored to ensure that only consenting

accountholders would have their private SNAP data disclosed to the ITPM. For instance, JXN Water could directly obtain consent from accountholders by including in each bill a means for accountholders to provide their consent for MDHS to confirm their SNAP status. ROA.2273. JXN Water could pay MDHS to mail to SNAP recipients a form consenting to MDHS disclosing their SNAP status, name, and address to JXN Water. ROA.2274. Or JXN Water could accept direct proof from SNAP recipients, such as a SNAP recertification notice. ROA.2274.

### 3.   The district court's decision.

On April 16, 2024, the district court entered a four-page order finding without elaboration that "[f]or good cause shown," the ITPM's adopted rates "are a 'federal assistance program.'" ROA.2379. Thus, the district court ordered "that the relevant federal and/or State agencies implementing the SNAP program" must turn over the names and addresses of SNAP recipients residing in specific ZIP codes in the Jackson area "no later than April 30, 2024," and provide updated lists on the first business day of each calendar quarter thereafter, as the ITPM requested. ROA.2379. The court did not direct its order at any

specific federal or state agency, nor did it acknowledge that the United States does not have the SNAP data or that MDHS is not a named party to either suit. Indeed, the court did not directly address any of the United States's substantive arguments. ROA.2376–79.

On April 25, 2024, the ITPM agreed to a two-week extension of the deadline to turn over the SNAP data, until May 14, 2024. ROA.2381. On April 30 (the original deadline in the order), the United States filed a letter with the court explaining that USDA is not in possession of any current data on SNAP households in Jackson. ROA.2413–15. The letter noted that MDHS administers SNAP in Mississippi and that USDA does not directly collect, maintain, or control information from SNAP households. ROA.2413. USDA reviewed the information within its possession and only had outdated address information for, at most, seventeen households within the relevant area that it obtained in its most recent quality-control review process for Mississippi's SNAP program. ROA.2413–14; *see also* ROA.2417–18 (explaining that USDA has limited information because the quality-control review process

involves a random sampling of households within the State).[1] Because neither the USDA nor any other federal agency possesses records that would be responsive to the court's order, the United States explained that it was complying with the court order and that it had no responsive records to send to the ITPM. ROA.2413–14.

On May 14, 2024, out of an abundance of caution, the United States moved the district court to stay its order pending appellate review in the event that the court found the United States's compliance with the SNAP order unsatisfactory or if the court intended to impose additional relief compelling the State's disclosure. ROA.2425. The ITPM initially opposed the United States's request but ultimately told the court that he did not oppose a stay pending appeal. ROA.2451. On May 28, 2024, the district court held a hearing on the motion to stay the SNAP order. At the hearing, the court heard testimony from a USDA employee that administers the SNAP program and took the motion under advisement.

---

[1] Upon further review, USDA determined that it inadvertently reported the number of households in the relevant ZIP codes for which it had data other than names and addresses and that it had name-and-address data for only eight households, not seventeen. ROA.2504.

On June 14, 2024, the United States and the State of Mississippi filed notices of appeal as to the SNAP order. ROA.2468; ROA.2470. On July 1, 2024—the date that an updated list of SNAP recipients was due under the district court's order—the United States filed another letter with the district court explaining that it had again searched for responsive records and determined that it was not in possession of any such records because it was only in possession of outdated address information for six households in the relevant area. ROA.2504–05.

As of August 19, 2024, the district court has not ruled on the United States's motion to stay the SNAP order pending appellate review. The United States has not filed a similar motion in this Court because, as noted above, we maintain that the United States thus far has complied with the district court's order without disclosing SNAP-recipient data.

## SUMMARY OF ARGUMENT

The district court committed clear legal error, and thus abused its discretion, when it held that the ITPM's proposed municipal water and sewer rate schedule was a "federal assistance program" under 7 U.S.C.

§ 2020(e)(8)(A)(i) and ordered the federal and state agencies implementing SNAP to disclose confidential SNAP-recipient data.

1. As a threshold matter, this Court has appellate jurisdiction to review the disclosure order. In compelling the "relevant federal and/or State agencies implementing the SNAP program" to "provide the ITPM" a list of the names and addresses of Jackson-area SNAP recipients, the district court granted an injunction subject to immediate appeal under 28 U.S.C. § 1292(a)(1). Alternatively, the order is a collateral order appealable under 28 U.S.C. § 1291 because it (1) conclusively determines the disputed question; (2) resolves an important issue separate from the merits of the case; and (3) is effectively unreviewable on appeal from a final judgment.

2. This Court should reverse and vacate the disclosure order. The text, structure, and statutory history of the Food and Nutrition Act confirm that the ITPM's proposed rate schedule is a municipal matter, not a "federal assistance program" under 7 U.S.C. § 2020(e)(8)(A)(i); thus, the rate schedule does not come within that exception to the general rule that it is unlawful for the United States or the State to disclose confidential SNAP-recipient data to third parties.

The text of the Food and Nutrition Act plainly refers to "federal," not local or municipal, assistance programs. Federal programs are those enacted by Congress and administered by the federal government. A rate schedule for a municipal utility is not a "federal assistance program." Nothing in the statutory text suggests that the term "federal assistance program" encompasses municipal utility rates, even when those utilities are temporarily operated by a receiver appointed by a federal court.

Indeed, the structure of the Food and Nutrition Act confirms that Congress knew how to distinguish between federal, state, and local programs when it drafted the statute. Under a different exception, the Act permits disclosure of SNAP data to "*local, State, or Federal* law enforcement officials" for the purposes of investigating an alleged violation of the Act. 7 U.S.C. § 2020(e)(8)(C). But the section of the statute at issue here, 7 U.S.C. § 2020(e)(8)(A)(i), refers to *federal* assistance programs—explicitly omitting municipal or local programs. Even if the ITPM's municipal rate schedule might qualify as a "local" assistance program, it is certainly not a "federal" one.

The statutory history of the Food and Nutrition Act confirms that the exception allowing the disclosure of SNAP data to "federal assistance programs" applies only to national programs that are authorized by laws enacted by Congress, not municipal programs. The statute initially permitted disclosure of recipient data only to persons directly connected with the Food Stamp Program, but, in 1977, Congress amended the statute to allow for limited disclosure to persons directly connected with certain other federal means-tested assistance programs created by federal statute and administered by the Executive Branch, such as Aid to Families with Dependent Children and Supplemental Security Income. In 1982, Congress broadened the statute to its current language, permitting the disclosure of SNAP-recipient data to those who administer "federal assistance programs." So the statutory history shows that the term "federal assistance program" is meant to encompass only means-tested programs authorized *by federal statute*. Nothing in the statutory history shows that the statute was meant to permit the disclosure of SNAP data to municipal programs.

Because the district court's disclosure order is based on a clearly erroneous interpretation of the Food and Nutrition Act's "federal assistance program" exception, this Court should reverse and vacate the order.

## STANDARD OF REVIEW

This Court reviews the trial court's decision to grant injunctive relief for abuse of discretion. *Thomas v. Hughes*, 27 F.4th 363, 367 (5th Cir. 2022). A trial court's misinterpretation of the law or erroneous application of the law to the facts is an abuse of discretion. *Hewlett-Packard Co. v. Quanta Storage, Inc.*, 961 F.3d 731, 743 (5th Cir. 2020); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law."). This Court reviews legal questions, including the district court's interpretation of a statute, de novo. *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 174 (5th Cir. 2011).

## ARGUMENT

## I. This Court has jurisdiction to review the disclosure order.

This Court has appellate jurisdiction to review the district court's order because the order grants an injunction or, in the alternative, is a

collateral order subject to direct appeal. If this Court finds that it does not have direct appellate jurisdiction, it should treat this appeal as a petition for mandamus.

### A. The district court's order grants an injunction appealable under 28 U.S.C. § 1292(a)(1).

This Court has jurisdiction to hear appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). An order need not be styled as an injunction to be appealable under § 1292(a)(1). *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84–85 (1981). A district court "grants" an injunction when an action it takes is "directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought in the complaint in more than a temporary fashion." *In re Deepwater Horizon*, 793 F.3d 479, 491 (5th Cir. 2015) (quoting *Police Ass'n of New Orleans Through Cannatella v. City of New Orleans*, 100 F.3d 1159, 1166 (5th Cir. 1996)). If the order does not expressly grant an injunction, the appealing party must show that "serious, perhaps irreparable, consequence" will result from the order to obtain interlocutory appellate

review. *In re Deepwater Horizon*, 793 F.3d at 492 (quoting *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978)).

The district court's order here granted an injunction when it ordered the federal and state agencies implementing the SNAP program to "provide the ITPM a list . . . containing the name and address of recipients of SNAP benefits" residing in the Jackson area and to provide an updated list "on the first business day of each calendar quarter" for an indefinite time. ROA.2379. That order is both directed to a party—the United States—and enforceable by contempt.

The order is also designed to further the ITPM's goals and is thus designed to accord some of the substantive relief sought in the complaint. In cases in which the district court enters an initial order that allows it to maintain "a continuing supervisory function," subsequent injunctions "that flow[] directly from that original order" are "appealable regardless of finality." *Moore v. Tangipahoa Parish Sch. Bd.*, 843 F.3d 198, 200–01 (5th Cir. 2016) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 171 F.3d 1083, 1086 (7th Cir. 1999)). Here, the district court's order appointing the ITPM and maintaining a continuing supervisory function was the original order

designed to ensure accord substantive relief sought in the complaint, and the recent SNAP order "is a subsequent injunction that flows directly from that original order." *Id.*

Moreover, the order threatens serious, irreparable harm to the public interest and the SNAP program. The disclosure of recipients' SNAP status, which itself reveals private financial information, could have a chilling effect on program participation, irreparably harming the United States's statutory duty under the Food and Nutrition Act. For example, in administering the program, Congress directed USDA to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. In fulfilling that purpose and seeking to improve SNAP participation rates, USDA fights the stigma that recipients face when enrolling in the program. If information on recipients is disclosed to third parties without those individuals' consent, it could deter others from enrolling in the program. That would negatively affect SNAP participation rates and irreparably harm USDA's administration of the program. ROA.2238–39.

Additionally, the order could cause irreparable harm to the public interest and the SNAP program because the ITPM's request for a list of all SNAP-recipients residing within the Jackson area is overinclusive. The court's order directs the agencies to provide a list of the name and address of all recipients of SNAP benefits residing in the 32 ZIP codes that JXN Water serves. ROA.2379. Although the disclosure would help facilitate a benefit that most SNAP recipients presumably would seek, that disclosure reveals their financial status and is nonconsensual. Also, the disclosure order is not limited to persons who are named accountholders for municipal water and sewer services. In other words, the SNAP recipient and the JXN Water accountholder are not always the same person, especially where the SNAP recipients are renters or in situations where extended families or multiple families share a billing address. If JXN Water knows that a SNAP recipient lives at an address it serves and sends the accountholder a notice that they qualify for a reduced rate, then that could result in the involuntary and unwanted disclosure of a resident's SNAP status (and, by necessary inference, the recipient's financial status) to, for example, a landlord, a roommate or an extended family member.

The problems from over-disclosure are exacerbated by the fact that some SNAP recipients may not be responsible for a water or sewer bill, such as residents of drug and alcohol treatment facilities, residents of domestic-violence shelters, and homeless individuals. These SNAP recipients would face the risks attendant to disclosure of private and sensitive financial information (such as stigmatization and data breaches) yet receive no benefit under the ITPM's rate schedule.

In sum, this Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because the challenged order grants an injunction. The order commands the federal and state agencies administering SNAP to turn over data on SNAP recipients and contemplates prospective relief on an ongoing, quarterly basis. And serious ongoing harm would result from the order.

## B. The disclosure order is a collateral order appealable under 28 U.S.C. § 1291.

Alternatively, the district court's order is appealable under 28 U.S.C. § 1291 as a collateral order. The collateral-order doctrine is a "practical construction" of § 1291 that provides for appellate jurisdiction over a small class of nonfinal orders. *In re Deepwater Horizon*, 793 F.3d at 483 (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)). Orders are

appealable under the collateral-order doctrine when they "finally determine claims of right separable from, and collateral to, rights asserted in the action [and that are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498 (1989) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). An appellate court has jurisdiction under the collateral-order doctrine when an order: "(1) conclusively determine[s] the disputed question; (2) resolve[s] an important issue separate from the merits of the case; and (3) is effectively unreviewable on appeal from a final judgment." *In re Deepwater Horizon*, 793 F.3d at 484.

The district court's order satisfies all three criteria. It conclusively determines the disputed issue whether the ITPM operates a "federal assistance program," such that the United States can be required to turn over SNAP-recipient data. ROA.2379. The issue is separate from the merits of the cases, which are Clean Water Act and Safe Drinking Water Act enforcement actions. And orders like this one, that require the disclosure or unsealing of confidential information, are effectively

unreviewable on final judgment because irreparable harm occurs immediately upon the information's release. *See Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (holding that the collateral-order doctrine applies to interlocutory orders unsealing confidential information because those orders are "effectively unreviewable on appeal from a final judgment principally because a decision to unseal a document cannot be undone; once confidential information is released, there is no going back"); *see also Apple, Inc. v. Samsung Electronics Co., Ltd.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013) (collecting cases).

### C. If this Court finds that it does not have appellate jurisdiction, it should treat and hear this case as a petition for a writ of mandamus.

Even if a party does not formally file a petition for a writ of mandamus, this Court may, in its discretion, treat the appeal as a petition for a writ of mandamus. *Leonard v. Martin*, 38 F.4th 481, 488 n.4 (5th Cir. 2022) (citing *In re Deepwater Horizon*, 793 F.3d at 491 n.12).

A party seeking mandamus must satisfy three conditions before the appellate court will issue the writ: (1) the petitioner seeking the

writ must have no other adequate means to attain the relief it desires; (2) the petitioner must satisfy the burden of showing that his right to the issuance of the writ is "clear and indisputable"; and (3) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380–81 (2004). To obtain a writ of mandamus, a petitioner must show that there has been a "usurpation of judicial power" or a "clear abuse of discretion that produces patently erroneous results." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (cleaned up). A district court abuses its discretion when it makes a decision based on "legally erroneous interpretations of statutes or regulations." *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014).

If this Court determines that it lacks direct appellate jurisdiction, it should treat this appeal as a petition for a writ of mandamus because there would be no other remedy for the United States to obtain the relief that it seeks. And a writ of mandamus would be appropriate here. For the reasons explained below, the district court clearly abused its discretion when it held that the JXN Water's municipal water and

sewer rate programs were "federal assistance programs" and compelled

the United States and Mississippi to disclose confidential SNAP-

recipient data.

## II. The district court abused its discretion in ordering disclosure of confidential SNAP-recipient data because a municipal rate schedule is not a "federal assistance program."

The district court erred when it ordered the federal and state

agencies implementing SNAP to disclose confidential SNAP-recipient

data and held that the ITPM operated a "federal assistance program."

ROA.2379. The district court ordered the disclosure of confidential

SNAP-recipient data on the view that the ITPM's proposed rate

schedule was a "federal assistance program" that permitted disclosure

of the data under 7 U.S.C. § 2020(e)(8)(A)(i). In so holding, the district

court misconstrued the statute and thus abused its discretion. The text,

structure, and statutory history of the Food and Nutrition Act confirm

that the ITPM's proposed rate schedule is not a "federal assistance

program." This Court should reverse.

The text of the Food and Nutrition Act broadly prohibits the

disclosure of information obtained from SNAP households. 7 U.S.C.

§ 2020(e)(8). That statute requires a State's plan of operations for SNAP

to include "safeguards which prohibit the use or disclosure of information obtained from applicant households," subject to several limited exceptions. *Id.* Those exceptions include disclosure of SNAP data "to persons directly connected with the administration or enforcement of the [Food and Nutrition Act], regulations issued pursuant to [the Food and Nutrition Act], Federal assistance programs, or Federally-assisted State programs." *Id.* § 2020(e)(8)(A)(i).

The term "federal assistance program" is not defined in the statute, so this Court should interpret the term according to its "ordinary and natural meaning and the overall policies and objectives of the statute." *Cheapside Minerals, Ltd. v. Devon Energy Prod. Co., L.P.*, 94 F.4th 492, 499 (5th Cir. 2024) (quoting *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014)). By the plain meaning of the statutory text, "federal assistance programs" refer to assistance programs that are administered by the federal government and operate under laws passed by Congress, in contrast with those administered by state, county, or municipal governments. For example, the General Services Administration maintains a "comprehensive" list of federal assistance programs. 2 C.F.R. § 200.203(a)(1). Some programs

on that list are Supplemental Security Income; the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC); and Temporary Assistance for Needy Families. *See Assistance Listings*, https://sam.gov/content/assistance-listings (last visited August, 19, 2024).

The ITPM's proposed municipal rate schedule, on the other hand, is not a federal assistance program under the Act. The ITPM operates the City of Jackson's *municipal* water and sewer systems. A proposed rate schedule adopted by these municipal utilities is plainly not a federal program. Indeed, the Jackson municipal Code of Ordinances, not a federal law, gives JXN Water the authority to set utility rates. *See* Jackon, Miss., Code of Ordinances § 122-273 ("The water service charge system will be reviewed annually and revised periodically to reflect actual treatment works operation and maintenance costs and debt service requirements . . . ."). Nothing in the text of the Food and Nutrition Act suggests the extraordinary conclusion that "federal assistance programs" encompass municipal utilities. Rather, the plain text of the statute applies only to assistance programs administered by the federal government.

That a federal court has appointed a private party as a receiver to operate the City of Jackson's municipal water and sewer systems does not transform these systems into "federal" assistance programs. The ITPM is only temporarily managing the City's water and sewer systems, and the City will reassume control of its utilities after the managership ends. Then, as now, the municipal water rates would continue to be municipal rates (governed by state and local laws), not a "federal assistance program."

Although the ITPM was appointed by a federal court, the ITPM is not carrying out a federal duty, but rather the City of Jackson's duties. Assumption of the City's duties under court order and with the federal government's assent does not transform the duty into a "federal assistance program," because a federal court does not create a "program" when it directs a receiver to do something in a particular matter. For example, if a district court appointed a receiver to manage a defendant's assets and directed the receiver to sell a particular piece of real property, the district court would not be establishing a "federal program" with its order, much less a "federal assistance program." The ITPM carries out discrete duties bound by state law; he does not

operate a "federal program." *See Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) ("Receivers appointed by a federal court are directed to 'manage and operate' the receivership estate 'according to the requirements of the valid laws of the State in which the property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.'" (quoting 28 U.S.C. § 959(b)).

The structure of the Food and Nutrition Act confirms that the ITPM's proposed rate schedule is not a "federal assistance program." Congress knew how to distinguish between federal and nonfederal programs. The Food and Nutrition Act—and the regulations implementing the Act—expressly distinguish between local, state, and federal authority. Indeed, the very same provision of the statute also includes an exception for "federally-assisted *State* programs." 7 U.S.C. § 2020(e)(8)(A)(i) (emphasis added). The Act also permits disclosure of SNAP data to "*local, State, or Federal* law enforcement officials" for the purpose of investigating an alleged violation of the Act. 7 U.S.C. § 2020(e)(8)(C) (emphasis added); *see also id.* § 2020(e)(8)(E) (similarly explicitly distinguishing between local, state, and federal officials).

But the text of the statute at issue here, 7 U.S.C.
§ 2020(e)(8)(A)(i), refers to *federal* assistance programs—explicitly omitting municipal or local programs. The fact that the statute, in the same subsection, distinguishes "federal" programs from "federally assisted State" programs shows that Congress knew the difference between federal and state programs when it drafted the statute.[2] "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Congress knew how to distinguish between federal, state, and local programs when it drafted the Act. The ITPM's municipal water and sewer rate might qualify as a "local" program, but it does not qualify as a "federal" one.

---

[2] The ITPM has not argued below that the exception for "federally assisted State programs" applies, so he has forfeited the argument and cannot raise it on appeal. *Rollins v. Home Depot USA,* 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court . . . .").

Third, the statutory history of the Food and Nutrition Act confirms that the exception allowing the disclosure of SNAP data to federal assistance programs applies to national programs that are authorized by laws enacted by Congress, not municipal programs such as the ITPM's proposed rate schedule.

Before 1977, the predecessor statute to the Food and Nutrition Act permitted the disclosure of food-stamp recipients only to "persons directly connected with the administration and enforcement of the provisions of the [Food Stamp Act of 1964] or the regulations issued pursuant to that Act." 7 U.S.C. § 2019(e)(3) (1976). USDA's implementing regulations accordingly only allowed the disclosure of information to "persons directly connected with the administration or enforcement of the provisions of the Food Stamp Act or regulations." 7 C.F.R. § 272.1(c)(1) (1979). But in 1977, Congress amended the Food Stamp Act to allow for data sharing between the Food Stamp program and certain other programs created by federal statute and administered by the Executive Branch, such as Aid to Families with Dependent Children and Supplemental Security Income. 7 U.S.C. § 2020(i) (Supp. II 1978).

In accordance with the statutory changes, USDA amended its regulations in 1978, permitting disclosure to persons directly connected "with other Federal or federally aided means-tested assistance programs such as Title IV-A [Aid to Families with Dependent Children (AFDC)], XIX (Medicaid), or XVI [Supplemental Security Income (SSI)]" of the Social Security Act. 7 C.F.R. § 272.1(c)(1) (1979); *see Food Stamp Program*, 43 Fed. Reg. 47,846, 47,884 (Oct. 17, 1978). USDA concluded that disclosure of such "food stamp case file information" should be permitted to "federally aided, means tested programs, such as AFDC, Medicaid, [and] SSI" in order "to achieve greater administrative efficiency." 43 Fed. Reg. at 47,847.

In 1982, Congress enacted the Food Stamp Act Amendments of 1982. Pub. L. No. 97-253, Tit. I, Subtit. E, 96 Stat. 772. In those amendments, Congress added text to 7 U.S.C. § 2020(e)(8) to further authorize disclosure of food-stamp data to those directly connected with the administration or enforcement of "Federal assistance programs, or federally-assisted State programs." *Id.* § 169, 96 Stat. 779.

In 1984, in response to that statutory change, USDA updated its relevant regulation by "insert[ing] broader statutory language" and

adding clarifying text in the regulation to explain that the relevant federal programs are "means-tested programs" of which "AFDC, Medicaid, and SSI" programs were "[e]xamples." *Food Stamp Program; Disclosure of Information and Noncompliance with Other Programs*, 49 Fed. Reg. 48,677, 48,678–79 (Dec. 14, 1984). As amended in 1984, the relevant regulatory text took its current form, authorizing the disclosure of information obtained from SNAP applicant or recipient households to persons directly connected with the administration or enforcement of the statutory and regulatory provisions governing SNAP (then, the Food Stamp Program), "other Federal assistance programs, [or] federally assisted State programs which provide assistance, on a means-tested basis, to low income individuals." 7 C.F.R. § 272.1(c)(1)(i) (1985); *see* 7 C.F.R. § 272.1(c)(1)(i) (2023).

In sum, Congress gradually broadened the allowable disclosure of SNAP data, but only incrementally and for purposes of administering means-tested programs enacted in federal law and administered by the Executive Branch. The City's municipal utility rate structure is no such program, nor is made so by the court's appointment of a receiver. The history of the Food and Nutrition Act and its implementing regulations

thus reinforces the conclusion that the district court's interpretation of the statute was incorrect.

* * *

The text, structure, and statutory history of the Food and Nutrition Act, make abundantly clear that the ITPM's proposed rate schedule is not a "federal assistance program" under 7 U.S.C. § 2020(e)(8)(A)(i). The district court's desire to assist the ITPM in administering the City's water supply was well intentioned. But equity does not give the court license to ignore the Act's limitations on disclosure. When acting as courts of equity, district courts have discretion "unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Co-op*, 532 U.S. 483, 496 (2001); *see also Virginian R. Co. v. Railway Employees*, 300 U.S. 515, 551 (1937) (stating that a court sitting in equity cannot "ignore the judgment of Congress, deliberately expressed in legislation"). Thus, a court cannot exercise its equitable power to "override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited" or "reject the balance that congress has struck in a statute." *Oakland Cannabis*, 532 U.S. at 496. Indeed, the district court appeared to agree

on this point, given that it identified a specific statutory exception to the general disclosure ban in the Food and Nutrition Act.

But the ITPM's proposed rate schedule was at best a municipal program, not a "federal assistance program." The district court misconstrued the law when it held otherwise and abused its discretion by ordering the United States or the State to disclose confidential SNAP data.

## CONCLUSION

For these reasons, the district court's disclosure order should be reversed and vacated.

Respectfully submitted,

s/ *Ezekiel A. Peterson*

TODD KIM
*Assistant Attorney General*

Of Counsel:

MINA KIM
*Deputy Assistant General
Counsel*

SARAH MERRILL
VIRGINIA HENNING
*Attorneys*
U.S. Dept. of Agriculture

August 19, 2024
90-5-1-1-09841

JOHN SMELTZER
KARL FINGERHOOD
ANGELA MO
EZEKIEL A. PETERSON
*Attorneys*
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 7415
Washington, D.C. 20044
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify:

1.    This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 7,277 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for the United States

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 5th Cir. R. 25.2.13;

(2)     the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and

(3)     the document has been scanned for viruses with the most recent version of a commercial virus scanning program, Microsoft Defender Antivirus Version 1.417.92.0 (updated August 13, 2024), and according to the program is free of viruses.

s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I electronically filed the foregoing using the court's CM/ECF system, which will notify all registered counsel.

s/ *Ezekiel A. Peterson*
EZEKIEL A. PETERSON

Counsel for the United States

# ADDENDUM

7 U.S.C. § 2011 ........................................................................ 2a

7 U.S.C. § 2020 ........................................................................ 3a

# 7 U.S.C. § 2011
*Congressional Declaration of Policy*

It is declared to be the policy of Congress, in order to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households. Congress finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households. Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of the Nation's agricultural abundance and will strengthen the Nation's agricultural economy, as well as result in more orderly marketing and distribution of foods. To alleviate such hunger and malnutrition, a supplemental nutrition assistance program is herein authorized which will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

That program includes as a purpose to assist low-income adults in obtaining employment and increasing their earnings. Such employment and earnings, along with program benefits, will permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation.

. . .

## (e) Requisites of State plan of operation

The State plan of operation required under subsection (d) of this section shall provide, among such other provisions as may be required by regulation—

   . . .

   **(8)** safeguards which prohibit the use or disclosure of information obtained from applicant households, except that—

   **(A)** the safeguards shall permit—

   **(i)** the disclosure of such information to persons directly connected with the administration or enforcement of the provisions of this chapter, regulations issued pursuant to this chapter, Federal assistance programs, or federally-assisted State programs; and

   **(ii)** the subsequent use of the information by persons described in clause (i) only for such administration or enforcement;

   . . .

   **(C)** notwithstanding any other provision of law, all information obtained under this chapter from an applicant household shall be made available, upon request, to local, State or Federal law enforcement officials for the purpose of investigating an alleged violation of this chapter or any regulation issued under this chapter;

   . . .